UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 19-161-DLB-CJS

BRANCH BANKING AND TRUST COMPANY                                PLAINTIFF

v.                                      ORDER AND
                          REPORT AND RECOMMENDATION

GERNER & KEARNS CO., L.P.A., et al.                             DEFENDANTS

\*\*\*   \*\*\*   \*\*\*   \*\*\*

There are several pending matters before the Court. First, Plaintiff Branch Banking and Trust Company ("BBT") filed a Motion for Clerk's Entry of Default (R. 21), which it subsequently renewed and supplemented (R. 40). Second, BBT filed a Motion for an Order to Authorize Receiver to Market and Sell Real Property and for Related Relief. (R. 51). Third, Plaintiff also filed a Motion for a Status Hearing on the Pending Motions. (R. 56). No opposition has been filed regarding these requests. Thus, the motions being ripe for review, this Court issues the following Order and Report and Recommendation.

I.   **FACTUAL AND PROCEDURAL BACKGROUND**

This matter involves three businesses as defendants: Gerner & Kearns Co., LPA, Prism Title & Closing Services, Ltd., and Rebel Properties, LLC (collectively "Business Defendants"), who allegedly entered into separate promissory notes with BBT. (*See* R. 1 at ¶¶ 9, 23, 37, and 59). BBT avers that the Business Defendants defaulted on the promissory notes after the sole owner of the three businesses, David Gerner, died on October 8, 2019. (*Id.* at ¶¶ 15, 29, and 47). To add to

the complex nature of this case, David Gerner did not have any succession plans in place for the three Business Defendants at the time of his death.

On November 8, 2019, BBT sued the three Business Defendants for the amount owed and fees associated under the separate promissory notes. (R. 1). At BBT's request, summonses were issued as to the Business Defendants on November 13, 2019. BBT also filed a Motion for the Court to Appoint a Receiver. (R. 7; R. 8; R. 9). Prism Title was served on November 18, 2019, when the company's registered agent, Maureen Gerner, was personally served by the Kenton County Sheriff. (R. 13). Thus, Prism Title had until January 6, 2020, to file an Answer or otherwise respond to BBT's Complaint. *See* Fed. R. Civ. P. 12(a)(1)(A). No action has been taken by Prism Title since its registered agent was served with process.

For Gerner & Kearns and Rebel Properties, BBT attempted service through the Kentucky Secretary of State. (*See* R. 9). The summonses were returned unexecuted on Rebel Properties on December 17, 2019 (R. 17), and on January 10, 2020, for Gerner & Kearns (R. 18). Like Prism Title, no actions have been taken by Gerner & Kearns or Rebel Properties in this case, and no other action has been taken by BBT to reattempt service of process on either of these Defendants.

A Motion Hearing was held on January 27, 2020, to discuss, among other issues, whether service of process was successfully completed on the Business Defendants. (R. 23). After that hearing, Plaintiff's counsel filed a subsequent Status Report, explaining that it had served the Business Defendants pursuant to Federal Rule of Civil Procedure 4(e) and Kentucky's long-arm statute. (R. 20 at ¶ 9). BBT also moved for the Clerk of Court to enter default against the Business Defendants on February 3, 2020, pursuant to Federal Rule of Civil Procedure 55(a). (R. 21).

On February 24, 2020, the presiding District Judge entered an Order Appointing Mark Rubin as the Receiver over the real and personal property owned by the Business Defendants that

was used as collateral to secure partial repayment of the promissory notes. (R. 27). A further Status Conference was held on November 20, 2020. (R. 44). Following that hearing, the Court determined that entry of default as to Prism Title was appropriate but that the service status for Gerner & Kearns and Rebel Properties remained under review. (R. 45). The Clerk entered default against Prism Title on November 24, 2020. (*See* R. 46).

BBT then filed a Motion for the Court to Authorize the Receiver to Abandon Burdensome or Inconsequential Personal Property, including a request to broaden the Receiver's discretion to abandon other personal property that might be deemed inconsequential in value. (R. 47). BBT also filed a Motion to Authorize the Receiver to Market and Sell Real Property. (R. 51). A Status Conference on BBT's Motions was held on September 14, 2021 and a Report and Recommendation issued directed to BBT's request to abandon burdensome or inconsequential property. The District Judge subsequently adopted this Recommendation. (R. 53; R. 54; R. 55). BBT's Motion to Authorize the Receiver to Market and Sell Real Property remained under advisement. (R. 53).

II.   **ANALYSIS**

   A.   **Clerk's Entry of Default Against Gerner & Kearns and Rebel Properties**

The Court first addresses BBT's Motion for Entry of Default against Gerner & Kearns and Rebel Properties. The Federal Rules of Civil Procedure provide that a business entity must be served by either (1) following state law for serving a summons, or (2) delivering a copy of the summons and complaint to an officer, a managing or general agent, or any other agent authorized to receive service of process. *See* Fed. R. Civ. P. 4(h)(1) and 4(e)(1). BBT's Supplemental Status Report reveals that it sought service of the summonses on Gerner & Kearns and Rebel Properties through the first method. (*See* R. 40 at ¶¶ 5, 8). Because BBT chose to serve these Defendants

3

under Rule 4(e)(1), the Court looks to Kentucky law to determine what methods of process are permitted by state law.

Kentucky's long-arm statute may be used for anyone "who is a nonresident of this Commonwealth." Ky. Rev. Stat. § 454.210(1).  The long-arm statute authorizes three methods for service of summonses in a civil action.  *See* Ky. Rev. Stat. § 454.210(3)(a).  Notably, the long-arm statute allows for service of process through the Kentucky Secretary of State "who, for this purpose, shall be deemed to be the statutory agent of such [entity]." Ky. Rev. Stat. § 454.210(3)(a)(3).

To serve process on the Kentucky Secretary of State as the statutory agent of a nonresident entity, the Clerk of the Court issues summonses against defendants named in the complaint and a copy of the complaint and summonses are sent to the Kentucky Secretary of State.  Ky. Rev. Stat. § 454.210(3)(b).  Within seven days of receiving copies of the summonses and complaint, the Kentucky Secretary of State mails a copy of the summons and complaint to each defendant "**at the address given in the complaint**." Ky. Rev. Stat. § 454.210(3)(c) (emphasis added).  The documents are sent via certified mail with a return receipt requested. *Id.* The Secretary of State then makes a return, showing that the office has complied with the provisions of the long-arm statute. *Id.*

Moreover, a "[s]ummons shall be deemed to be served on the return of the Secretary of State and the action shall proceed as provided in the [Kentucky] Rules of Civil Procedure." *Id.* Importantly, a signed return receipt is not necessary for service to be effective in Kentucky. *See Ashford v. Bollman Hat Co.*, No. 10-cv-192, 2011 WL 127153, at *2 (E.D. Ky. Jan. 14, 2011) (citing *Haven Point Enters., Inc. v. United Ky. Bank, Inc.*, 690 S.W.2d 393, 395 (Ky. 1985) (holding that a signed, returned receipt is not necessary from the addressee as part of the return by

4

the Secretary of State)); *see also Davis v. Wilson*, 619 S.W.2d 709, 710-11 (Ky. Ct. App. 1980) (finding proper service pursuant to the long-arm statute even though the envelope containing the summons was returned to the Secretary of State marked "unclaimed") (citation omitted)). "Valid proof of service on the record create[s] a presumption of valid service, a presumption a defendant must overcome." *Evans v. Molina*, No. 5:14-cv-00330, 2015 WL 5723590, at *3 (E.D. Ky. Sept. 29, 2015) (internal quotation marks and citations omitted).

On February 3, 2020, BBT moved for entry of default against Gerner & Kearns, Prism Title, and Rebel Properties for failing to timely plead or otherwise defend itself in this action. (R. 21). The address used for Gerner & Kearns to be served via certified mail was 809 Wright Summit Parkway, Suite 200 in Fort Wright, Kentucky through the Kentucky Secretary of State. (R. 9 at Page ID 350). BBT used 7900 Tanners Gate Lane in Florence, as the address to serve Rebel Properties via certified mail through the Kentucky Secretary of State. (*Id.* at Page ID 352).

The Court held a Status Conference on November 24, 2020, to discuss, among other things, the methods utilized for service of process and whether those methods provided proper notice of this action. (*See* R. 38). Specifically, the Court questioned the adequacy of BBT using addresses for service of process upon Gerner & Kearns and Rebel Properties that were not consistent with the addresses listed on the Kentucky or Ohio Secretary of State's website. (*Id.* at Page ID 547). In response to the Court's concern, BBT represented that it used addresses provided by Ms. Gerner and her attorney for attempting to serve Gerner & Kearns and Rebel Properties. (*Id*).

Unlike other statutes relating to service of process, the long-arm statute does not specify which business address should be listed in a complaint. For example, § 14A.4-040(2) of the Kentucky Revised Statutes states that an entity with no registered agent may be served via mailing addressed "to the entity or foreign entity at its principal office." In contrast, the long-arm statute

5

simply requires mailing "to the defendant at the address given in the complaint." Ky. Rev. Stat. § 454.210(3)(c). However, any summons or process must be issued "in good faith." Ky. Rev. Stat. § 413.250. The Sixth Circuit has held that, in Kentucky, good faith requires "a bona fide, unequivocal intention to have [summons] served or proceeded on presently or in due course or without abandonment." *Wilson v. Butzin*, 854 F. App'x 682, 685-86 (6th Cir. May 10, 2021) (citing *Isaacs v. Caldwell*, 530 S.W.3d 449, 456 (Ky. 2017)). In *Wilson*, the Sixth Circuit stated that "[i]nadvertently sending an initial summons to an incorrect address or defendant might well satisfy [the] good-faith standard *when the plaintiff promptly corrects the error upon learning of the mistake*." *Id.* at 686 (emphasis added) (citations omitted).

Under this authority, as long as the Kentucky Secretary of State complies with the requirements of the long-arm statute, service on a nonresident via this method is generally deemed perfected, regardless of extenuating circumstances. *See Deskins v. Estep*, 314 S.W.3d 300, 303 (Ky. Ct. App. 2010) (holding that service via the long-arm statute was perfected because Secretary of State complied with statute, despite defendant's refusal to accept the mailing); *Cox v. Rueff Lighting Co.*, 589 S.W.2d 606, 607 (Ky. Ct. App. 1979) (holding service via long-arm statute was effective even though the corporation's registered agent discarded the summons and complaint as junk mail).

When a business entity fails to provide the Secretary of State with updated business information, such as failing to update the principal office address or failing to update a change in registered agent, this neglect does not typically impact the party attempting to serve the business entity. *See Polston v. Millennium Outdoors, LLC*, 6:16-CV-16-KKC, 2017 WL 878230 at *2, *9 (E.D. Ky. Mar. 6, 2017) (finding service through long-arm statute proper where plaintiff provided address and statutory agent as listed on Mississippi Secretary of State's website, although LLC

6

defendant later said information was incorrect and outdated); *Bradford White Corp. v. Ky. Farm Bureau Mut. Ins. Co.*, 2013-CA-001549-MR, 2014 WL 3722240 at *2 (Ky. Ct. App. July 25, 2014) (finding service through long-arm statute was perfected despite four undelivered summons, and lack of actual notice of lawsuit was inexcusable because the business entity failed to maintain current addresses and name of registered agent on Secretary of State website).

However, the issue for the instant matter considers the opposite effect; namely, is service perfected when there is no registered agent or officer to serve and plaintiff uses an address provided by the only alleged interested party and that address is not the address provided on the Secretary of State's website? There is no Kentucky case law analyzing when service is perfected where a business entity that is sued has failed to maintain updated business information with the Secretary of State because the sole member and registered agent of a business entity has died.

But other jurisdictions have examined similar issues. For example, the Ohio Court of Appeals determined that an LLC defendant's "failure to comply with its statutory duty" by failing to appoint a new statutory agent after the former agent's death "cannot be used as a means to evade the plaintiff's attempt to perfect service." *S&S Quality Remodeling v. Phoenix Remediation*, 2014-Ohio-4609, 2014 WL 5307159, at *3 (Ohio Ct. App. Oct. 17, 2014). In Missouri, the state's Court of Appeals held that service upon the Secretary of State as a substituted registered agent of a corporation was appropriate after the plaintiffs were unable to serve process on the defendant's registered agent because he was deceased. *Kammer v. Cohen Appliance & T.V. Center, Inc.*, 767 S.W.2d 574, 576 (Mo. Ct. App. 1988).

    1.  **Gerner & Kearns**

This brings us to whether service on Gerner & Kearns was perfected with the address provided to the Kentucky Secretary of State. Gerner & Kearns is a nonresident for purposes of the

7

long-arm statute because it was incorporated in Ohio as a Legal Professional Association in 2004 and maintained this status until October 14, 2020.[1] BBT served Gerner & Kearns via the Kentucky long-arm statute. The Clerk of Court issued a summons to Gerner & Kearns on November 13, 2019, addressed to 809 Wright Summit Parkway, Suite 200 in Fort Wright, Kentucky—the address allegedly for the Defendant's principal office, which address was provided by BBT in the Complaint. (R. 9 at Page ID 350-51; R. 1 at Page ID 1). The service return noted that the Secretary of State was served with a summons and accompanying documents for Gerner & Kearns on November 26, 2019. (*Id.*). The Secretary of State then "served the defendant by sending a copy of the summons and accompanying documents via certified mail, return receipt requested, on November 26, 2019." (*Id.*). However, the "undelivered letter" was "unclaimed," and marked by the postal service with "RETURN TO SENDER" and "UNABLE TO FORWARD." (*Id.*).

In the Complaint, BBT averred that the principal office for Gerner & Kearns was in Fort Wright, Kentucky and the Kentucky Secretary of State used this address for mailing purposes. (*See* R. 1 at ¶ 2). BBT also stated that the entity's registered agent was "David E. Gerner (now deceased)" and provided an address for the registered agent at "119 East Court Street, Suite 503, Cincinnati, Hamilton County, Ohio." (*Id.* at Page ID 1). However, the long-arm statute directs the Secretary of State to send the mailing "to the defendant"—not to the defendant's registered agent. *See* Ky. Rev. Stat. § 454.210(3)(c). This is because the Secretary of State is "deemed to be the statutory agent" for purposes of the long-arm statute. *See* Ky. Rev. Stat. § 454.210(3)(a)(3). Therefore, it appears that the Secretary of State complied with the long-arm statute by mailing the summons to the Fort Wright, Kentucky address listed in the Complaint.

---

[1] Ohio Secretary of State, *Business Search*, https://businesssearch.ohiosos.gov?=businessDetails/1452108.

David Gerner was listed as the original statutory agent for the L.P.A., at the address 215 West Ninth Street in Cincinnati, Ohio, but this information was updated in June 2019, changing the address of David E. Gerner as statutory agent to 119 East Court Street, Suite 503, Cincinnati, Ohio.[2]  The L.P.A.'s last biennial report from 2018 lists two shareholders: David E. Gerner and Michael S. Kearns.[3]  BBT alleged that Michael Kearns had sold his interest in the law firm to David Gerner before David Gerner died, even though this was not reflected with the Ohio Secretary of State.  BBT also tendered Maureen Gerner's Status of Certain Assets Notice to Claimants, which provides that David Gerner had all ownership interest in Gerner & Kearns.  (R. 40-3 at Page ID 580).

The Ohio Secretary of State lists the location of Gerner & Kearns as "Cincinnati, Hamilton [County]," although the database does not list a principal office address.[4]  The most recently filed Ohio biennial report from 2018 was addressed to 7900 Tanners Gate Lane in Florence, Kentucky.[5]  Neither the Ohio nor Kentucky Secretary of State lists the Fort Wright address as a current address for Gerner & Kearns.[6]  Gerner & Kearns previously maintained a website for the business that is not presently active; however, the most recent archival data from the site captured in August 2018 indicates that the business had four addresses at that time: an "executive office" in Newport, Kentucky; a "corporate office" in Cincinnati, Ohio; a "Florence office" in Florence, Kentucky;

---

[2] *Id.*

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] *See id.*; *see also* Kentucky Secretary of State, *Business Entity Search*, https://web.sos.ky.gov/ftshow/(S(tg4pswvzaneowucao21kvzmy))/default.aspx?path=ftsearch&id=0585665&ct=11&cs=99999&ce=mwZrQX8Ov5lhd7PxxzjM%2bgaCh3nbaaOC%2b9O6BEriFfQ%2bRGsviL5qyw4nb4j4O87B.

9

and a "Lawrenceburg office" in Lawrenceburg, Indiana.[7] The business's former website does not appear to list a Fort Wright, Kentucky address.

Additionally, Gerner & Kearns obtained a certificate of authority from the Kentucky Secretary of State in 2004, authorizing the foreign entity to transact business in Kentucky.[8] In its last annual report with the Kentucky Secretary of State's office from January 2019, Gerner & Kearns listed David Gerner as the registered agent with the address 335 East Third Street in Newport, Kentucky.[9] The report also included David Gerner and Michael S. Kearns as the entity's current officers.[10]

Since that time, Gerner & Kearns has not provided updated contact information for a registered agent to the Ohio Secretary of State or to the Kentucky Secretary of State. Under Ohio law, Gerner & Kearns was obligated to appoint another registered agent after David Gerner's death. *See* Ohio Rev. Code § 1706.09(D). However, the entity failed to do so. In October 2020, the Ohio Secretary of State cancelled Gerner & Kearns charter for failure to file a biennial report.[11] Likewise, the entity's Kentucky certificate of authority was revoked on October 8, 2020, because

---

[7] *See* Way Back Machine, https://web.archive.org/web/20180824220416/http://www.gernerlaw.com/index.php/locations/locations/.

[8] Kentucky Secretary of State, *Business Entity Search*, https://web.sos.ky.gov/ftshow/(S(vxcxfrm1bzpgs2dkit0owqwt))/default.aspx?ce=mwZrQX8Ov5lhd7PxxzjM%2bu2HarptksGBkiVSKqnxq4vHQPpqAqqKORLQbpyaqP9w.

[9] *Id.*

[10] *Id.*

[11] Ohio Secretary of State, *Business Search*, https://businesssearch.ohiosos.gov?=businessDetails/1452108.

10

Gerner & Kearns failed to file an annual report.[12]  Gerner & Kearns has remained an inactive business entity in Ohio and Kentucky.

There are several addresses in both Ohio and Kentucky associated with Gerner & Kearns. Throughout this litigation, legal documents have been mailed to the following addresses unsuccessfully, and subsequently returned to sender:

- 809 Wright Summit Parkway, Suite 200, Fort Wright, Kentucky 41011;
- 119 East Court Street, Suite 503, Cincinnati, Ohio 45202;
- 7900 Tanners Gate Lane, Florence, Kentucky 41042; and
- 8291 Beechmont Avenue, Suite C, Cincinnati, Ohio 45255.

(*See, e.g.*, R. 18 at Page ID 379-80; R. 32 at Page ID 446; R. 34 at Page ID 517).  Regardless, the Kentucky Secretary of State complied with all statutory requirements to perfect service by mailing the summons to the address provided by BBT in its Complaint.  *See* Ky. Rev. Stat. § 454.210(3)(c). The fact that the mailing was returned as undelivered and that the registered agent was deceased do not make service ineffective.  *See Rueff Lighting Co.*, 589 S.W.2d at 607 (noting that actual notice is not required to effectuate service under the long-arm statute).

More importantly, BBT stated that Gerner & Kearns has informal notice about the pending matter because Ms. Gerner was served as the registered agent for Prism Title and turned over to BBT the keys to the premises and property of Gerner & Kearns and Rebel Properties.  (*See* R. 45). BBT also explained that it has received a letter from Ms. Gerner referencing this pending matter and the properties at issue.  (*Id.*).  Ms. Gerner's Status of Certain Assets Notice of Claimants also identifies BBT as a creditor.  (R. 40-3 at Page ID 580).

---

[12] *See* Kentucky Secretary of State, *Business Entity Search*, https://web.sos.ky.gov/ftshow/(S(vxcxfrm1bzpgs2dkit0owqwt))/default.aspx?ce=mwZrQX8Ov5lhd7Pxxzj M%2bu2HarptksGBkiVSKqnxq4vHQPpqAqqKORLQbpyaqP9w.

11

Based on all of these facts, the Court finds that BBT has made a good faith effort to serve proper notice on Gerner & Kearns. *See Wilson*, 854 F. App'x at 685-86. Thus, service through the long-arm statute via the address listed in the Complaint was perfected, despite Gerner & Kearns not receiving actual notice of the lawsuit because it failed to maintain a current address and name a successor registered agent. *See generally Bradford White Corp.*, 2013-CA-001549-MR, 2014 WL 3722240, at *2. Therefore, entry of default as to Gerner & Kearns is appropriate.

### 2. Rebel Properties

Like Gerner & Kearns, the issue is whether service on Rebel Properties was perfected with the address provided to the Kentucky Secretary of State. Rebel Properties is also a nonresident for purposes of the long-arm statute because it was organized as a domestic limited liability company under Ohio law in 2010.[13] David Gerner was listed as the original statutory agent for the LLC, at the address 215 W. Ninth Street in Cincinnati, Ohio.[14] In 2013, Rebel Properties filed a document listing David Gerner as the statutory agent and listing the address as 8291 Beechmont Avenue, Suite C in Cincinnati, Ohio.[15] Rebel Properties has not made any filings with the Ohio Secretary of State since 2013 and remains an active LLC.[16] Rebel Properties was not authorized to transact business in Kentucky through the Kentucky Secretary of State.[17]

---

[13] Ohio Secretary of State, *Business Search*, https://businesssearch.ohiosos.gov?=businessDetails/1968260.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] Kentucky Secretary of State, *Business Entity Search*, https://web.sos.ky.gov/ftshow/(S(br5xvb2kly0cvmamxt55quea))/default.aspx?path=ftsearch&id=0955489&ct=06&cs=99998&ce=IgE7By8%2bhscW10LyAWN4yqLSmVv3EtcLhO41yZAaFIje9ABwHut6lt7jSmWtCtAg. A search for "Rebel Properties" populates an unrelated Kentucky LLC that was organized under the same name. David E. Gerner is listed as the registered agent for several inactive Kentucky LLCs,

In 2018, Rebel Properties, LLC entered into two loan agreements with BBT. (R. 1 at Page ID 8-9, 13). The first loan was partially secured by a mortgage on real property in Boone County, Kentucky. (*Id.*). The mortgage pertained to property located at 7900 Tanners Gate Lane in Florence, Kentucky. (R. 1-12 at Page ID 102). The second loan was partially secured by a mortgage on real property in Campbell County, Kentucky. (R. 1-17 at Page ID 155). The mortgage pertained to property located at 335 East Third Street in Newport, Kentucky. (*Id.*). Both mortgages were signed by "DAVID E. GERNER, Manager and Sole Member of REBEL PROPERTIES, LLC." (R. 1-12 at Page ID 113; R. 1-17 at Page ID 167).

BBT's Complaint provides that Rebel Properties' principal office is located at 7900 Tanners Gate Lane in Florence, Kentucky. (*See* R. 1 at ¶ 4). One mortgage agreement between Rebel Properties and BBT states the following:

> The source from which Grantor [Rebel Properties] derived title to the Real Property [7900 Tanners Gate Ln., Florence, KY 41042-1863] or the interest encumbered here is as follows: AND BEING the same property conveyed to Rebel Properties, LLC, an Ohio limited liability company, by deed from Branch Banking and Trust Company, a North Carolina banking corporation and successor in interest to The Bank of Kentucky, Inc., dated the 12th day of February, 2016, and of record in Deed Book 1066, at page 569, Office of the Boone County Court Clerk.

(R. 1-12 at Page ID 102-03). Additionally, the City of Florence, Kentucky issued a code enforcement uniform citation to Rebel Properties LLC in November 2020, with the location of the violation listed as 7900 Tanners Gate Lane.[18] The citation lists as a mailing address: 8291 Beechmont Ave, Suite C in Cincinnati, Ohio.[19]

---

including "Rogue Realty, LLC", "Bridges Network Solutions, LLC", and "Gatekeeper Default Management Services, LLC", but none appear to be related to the Ohio Rebel Properties LLC.

[18] *See* https://florence-ky.gov/wp-content/uploads/2021/04/BD-2020-145-7900-Tanners-Gate-Lane.pdf.

[19] *Id.*

13

Although the Ohio Secretary of State does not list the Florence, Kentucky address in connection with Rebel Properties, LLC, collateral sources clearly link the business entity to this address. Because the Kentucky Secretary of State complied with all requirements of the long-arm statute in serving Rebel Properties, service is considered effective. *See* Ky. Rev. Stat. § 454.210(3)(c). The fact that the summons was returned as undeliverable and the fact that the sole member and registered agent of the LLC was deceased do not impact the effectiveness of service. *See Davis v. Wilson*, 619 S.W.2d at 710-11. Therefore, entry of default as to Rebel Properties is appropriate.

**B.    BBT's Motion to Market for Sale the Real Properties**

BBT also moves for authorization on the part of the Receiver to market two properties for private sale. (R. 51 at Page ID 632). Specifically, BBT would like the Court to amend its Order Appointing Receiver (R. 27) to allow the Receiver to market the following properties for private sale:

1. The office building and related improvements at 7900 Tanners Gate Lane, Florence, Boone County, Kentucky 41042 ("Tanners Gate Lane") and the personal property within; and

2. The "Taylor Mansion" located at 335 East Third Street, Newport, Campbell County, Kentucky 41071 and any personal property within.[20]

(R. 51 at Page ID 633). BBT argues that Rebel Properties granted BBT a mortgage on these parcels of real property and they are therefore collateral used to partially secure repayment of certain obligations that Rebel Properties has now defaulted on. (*Id.* at Page ID 633; *see also* R. 1 at ¶¶ 39, 60).

---

[20] Collectively, the Court will refer to Tanners Gate Lane and the Taylor Mansion as "Properties."

The Court has previously appointed Mark A. Rubin with Southeast Property Management, LLC to serve as Receiver for the purpose of protecting and preserving all real and personal property collateral of the Business Defendants. (*See* R. 27). In pertinent part, the Receiver Order directs and authorizes the Receiver to protect and preserve "the Property, manage the Property, and [collect] the rents and profits thereof" (*Id.* at ¶ 3), "assume control over the Property, including all fixtures, equipment, inventory, and personal property of any kind located at or on said premises and enter agreements with a reputable management company (including firms associated with the Receiver)" (*Id.* at ¶ 3(a)), and "recommend to the Court to perform any other such duties when the Receiver reasonably believes that performance thereof is necessary to the objectives of the Receivership." (*Id.* at ¶ 12).

BBT's Motion argues that it has determined, after consulting with the Receiver, that the best course would be to avoid selling the real property on the "courthouse steps" and avoid having a separate auction for the personal property conducted under Article 9 of the Uniform Commercial Code. (R. 51 at ¶ 10). Instead, BBT would like to conduct a private sale of the Properties pursuant to 28 U.S.C. § 2001(b). (*Id.* at ¶ 9). But because the existing Receiver Order does not expressly authorize the Receiver to market for sale either of the properties that are the subject of this action, BBT has made the instant request. Thus, BBT asks this Court to allow the Receiver to market the Properties for eventual private sale by employing brokers, negotiating and receiving offers to purchase the Properties, and taking any and all steps deemed necessary and appropriate by the Receiver. (*Id.* at Page ID 635).

BBT's Motion provides little guidance for its request other than citing 28 U.S.C. § 2001(b) as support for its request to authorize a private sale of the collateral. (*See id.* at Page ID 634). This statute provides:

15

> After a hearing, of which notice to all interested parties shall be given by publication or otherwise as the court directs, ***the court may order the sale of such realty or interest or any part thereof at private sale for cash or other consideration and upon such terms and conditions as the court approves, if it finds that the best interest of the estate will be conserved thereby***. Before confirmation of any private sale, the court shall appoint three disinterested persons to appraise such property or different groups of three appraisers each to appraise properties of different classes or situated in different localities. No private sale shall be confirmed at a price less than two-thirds of the appraised value. Before confirmation of any private sale, the terms thereof shall be published in such newspaper or newspapers of general circulation as the court directs at least ten days before confirmation. The private sale shall not be confirmed if a bona fide offer is made, under conditions prescribed by the court, which guarantees at least a 10 per centum increase over the price offered in the private sale.

28 U.S.C. § 2001(b) (emphasis added).

On November 24, 2020, this Court held a Status Conference to discuss, among other matters, BBT's request to market for sale the collateral. (R. 45). BBT explained that because the collateral is not in the bank's name, it must proceed under 28 U.S.C. § 2001(b), which authorizes a court to order the sale of property when a Receiver is appointed. (R. 53 at Page ID 645). BBT explained that this Court would be able to authorize the sale of the subject property free and clear of any liens. Moreover, BBT stated that if its request is granted, then it intends to proceed on a dual track: (1) liquidate the collateral; and (2) seek default judgment on the promissory note.

BBT's request is not one that is commonly seen in federal court. Although it is not referenced in BBT's Motion, at least one other federal court in Kentucky has used this statute to authorize a receiver to market for sale real property as part of its Order Appointing Receiver. *See generally The Huntington Nat'l Bank, as Trustee v. Saint Catharine College, Inc.*, Case No. 3:16-cv-465-DJH, at R. 12 ¶ 5(m) (W.D. Ky. July 26, 2016) (authorizing the receiver to "[p]lace all or part of the Property for sale on the market[.]"). As part of the receiver's authority, the parties jointly moved to sell the real property. *Id.* at R. 27. The district court eventually granted the parties' request, finding that the parties had complied with the statutory directives in 28 U.S.C. §

16

2001(b).  *See Huntington Nat'l Bank v. Saint Catharine College, Inc.*, Case No. 3:16-cv-465-DJH, 2016 WL 7330594, at *1 (W.D. Ky. Dec. 16, 2016).  Thus, this case provides a basis to support BBT's request to permit the Receiver to market for sale the Properties.

Here, BBT argues that it would be in the best interest of the estate to allow the Receiver to market for sale the Properties pursuant to 28 U.S.C. § 2001(b).  (*See* R. 51 at ¶ 10).   At the November 24, 2020 Status Conference, the Receiver explained that there was a lot of interest in the properties because of the low interest rates.  (*See* R. 45).  At the September 14, 2021 Status Conference, BBT explained that the Receiver, who is obligated to safeguard the Properties under the Order Appointing Receiver, believes that a private sale would generate a better sales price.  (*See* R. 53).  BBT's Motion for a Hearing, it stated that the Receiver has received separate written offers to purchase the Properties from bona fide purchasers.  (R. 56 at ¶ 3).  Under these facts, the Court finds that BBT and the Receiver's representations are reasonable and appropriate to allow the Receiver to safeguard the Properties.  Therefore, the Court will authorize BBT's request to market for sale the Properties.

### III.   CONCLUSION AND RECOMMENDATION

Accordingly,

**IT IS ORDERED** as follows:

1)   The Clerk is directed to enter the default of the remaining Defendants, Gerner & Kearns and Rebel Properties.

2)   Plaintiff's Motion for a Status Hearing (R. 56) is hereby **denied as moot.**

**IT IS RECOMMENDED** as follows:

1)   BBT's Motion (R. 51) **be granted** to expand the duties of the Receiver under this Court's Order Appointing Receiver (R. 27), so as to allow the Receiver to market for sale the office

building and Taylor Mansion real properties and the contents contained therein, located at 7900 Tanners Gate Lane, Florence, Boone County, Kentucky 41042, and the Taylor Mansion located at 335 East Third Street, Newport, Campbell County, Kentucky 41071.

2)    That the Receiver **be authorized,** as part of his expanded duties, to retain any reputable broker to undertake any and all duties associated with marketing the Properties for sale, including the ability to negotiate and receive offers, provided that such marketing, retention, and other contracts relating to such sale and the terms thereof shall be subject to Court approval.

3)    To ensure the subsequent actions taken by BBT and the Receiver are in compliance with the specific statutory requirements set forth in 28 U.S.C. § 2001(b) and thereby facilitate any potential private sale of the Properties, that BBT **be required** to file a revised proposed order from that filed with its Motion (*see* R. 51-2), which revised order should detail the additional steps BBT and the Receiver propose to take to advance the expansion of the Receiver's duties while adhering to the requirements of 28 U.S.C. § 2001(b).

<u>Unless Plaintiff files a Notice indicating that it does not intend to file objections and waives the objection period</u>, particularized objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984); *aff'd*, 474 U.S. 150 (1985).  A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)).  Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal.

*Howard*, 932 F.2d at 509. A party may file a response to another party's objection within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2).

Dated this 1st day of February, 2022.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\Orders\civil cov\2019\19-161-DLB R&R re mtn #47 per prop.docx